In the Matter of the Voluntary Second Intermediate Judicial Settlement of the Account of Proceedings of RICHARD W. NAYLOR and Others, as Trustees under the Will of JOSEPH NAYLOR, Deceased.

RICHARD W. NAYLOR and Others, as Trustees, and GRACE A. N. OXENFORD and Others, Appellants; JOSEPH NAYLOR, Respondent.

First Department, January 14, 1921.

Wills — construction of trust provisions of will as to disposition of remainder after termination of life estate — provision for distribution of remainder on death of one of several life tenants — special provision for distribution of remainder after determination of particular life estate to children of second marriage of said life tenant not applicable on death of any other life tenant — commissions of trustees.

The testator provided for the division of his residuary estate into seven equal parts to be held in trust for his seven nephews and nieces, and on the death of any one of the nephews and nieces leaving him issue surviving, with the exception of one named nephew, the fund held in trust for the deceased nephew or niece should be paid to the surviving children of said nephew or niece, and that in case any nephew or niece die without issue, then the principal fund should be divided among the said survivors of the said nephews and nieces and the then surviving lawful issue or descendants of any of them. With respect to the fund held in trust for the nephew excepted from the general clause of the will, it was provided that on his death the principal fund should be divided among the surviving children of the second marriage of said nephew, and that in case he should die without leaving lawful descendants by his second marriage, then the fund should be distributed among the then survivors of the said seven nephews and nieces.

*Held*, that the children of both the first and second marriages of the nephew excepted from the general provision were entitled to share in the division of the principal sum on the death of any other nephew or niece without issue or descendants, as provided in said general provision. The trustees had received all the commissions to which, upon the facts, they were lawfully entitled.

APPEALS by Richard W. Naylor and others from parts of a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of said court on the 21st day

First Department, January, 1921.          [Vol. 194.

of July, 1920, construing the will of Joseph Naylor, deceased, and denying commissions on a part of the principal of a trust fund, being the increase on the sale of certain property over the amount for which the trustees took said property.

*George W. Carr*, for appellants Richard W. Naylor and others, as trustees, etc.

*Hugh Gordon Miller*, for appellants Grace A. N. Oxenford and others.

*Charles F. Bliss*, attorney [*Wilmer J. McAllister* of counsel], for the respondent Joseph Naylor.

DOWLING, J.:

The first question presented by these appeals is the construction of certain provisions in the will of Joseph Naylor, deceased.

Joseph Naylor died in the borough of Manhattan, city of New York, leaving a last will and testament which was duly admitted to probate in the Surrogate's Court, New York county, on October 20, 1897, and letters testamentary were issued thereunder to his widow, Eliza Naylor, on October 20, 1897. She died on December 7, 1901, and pursuant to the terms of the will, letters testamentary were thereafter issued to Nicholas W. Day, Lyman N. Jones and John Naylor.

John Naylor, a nephew of testator, died on March 7, 1914. He had been married twice. By his first wife he had one child who survived him, viz., Grace A. N. Oxenford, and also one child of a deceased daughter, viz., Grace A. Boyer. By his second wife he had one child who survived him, viz., Joseph Naylor.

Lyman N. Jones, an executor, died on March 2, 1916, and Nicholas W. Day, another executor, died on March 6; 1916. On July 12, 1916, Richard W. Naylor, Lyman N. Jones and Walter R. Mason were duly appointed by the Surrogate's Court of New York county successors and substituted trustees under said will. Such trustees thereafter presented to the Surrogate's Court a first account, verified November 26, 1917,

and a voluntary first intermediate account, verified January 31, 1919, both of which accounts were judicially settled and approved.

Mary J. Naylor, a niece of testator, died on April 4, 1919, without leaving lawful issue or descendants. She was a beneficiary under the part of the 5th paragraph of testator's will, reading as follows:

"*Fifth.* After the death of my said wife and after the payment of the legacies and providing for the trust for the benefit of the said Josephine Naylor Shedd as directed in the preceding Fourth Clause of this Will, I direct my said Executors to divide all the rest, residue and remainder of my estate, real and personal into seven equal parts; to safely and securely invest each of said parts upon a separate Trust and to keep the same invested in real estate, or in Bonds secured by first Mortgages upon improved real estate in the City or State of New York, or in Bonds of the United States or of the State of New York, or of Cities in the State of New York, and to collect the rents, interest and income thereof and to pay the net income arising upon each one of said separate TRUST shares in equal semi-annual payments to one of my seven nephews and nieces, Richard W. Naylor, John Naylor, Mary J. Naylor, Myra Naylor, Abbie Morgan Wright, Sarah Morgan Mason and Rosina Naylor Morgan Jones during the term of his or her natural life: and upon the death of each of my seven nephews and nieces, excepting the said John Naylor, to pay, convey, transfer and set over the capital of the one-seventh part of my residuary estate invested and held for his or her benefit as aforesaid to his or her then surviving lawful children and the then surviving lawful issue or descendants of any child or children who may have previously died leaving such issue or descendants equally *per stirpes* and not *per capita.*"

As Mary J. Naylor died without leaving lawful issue or descendants after the death of the widow Eliza Naylor, the question of what is to become of the one-seventh share thus left to her is to be decided under the following clause of said paragraph " Fifth " reading as follows: " In case either or any of my said seven nephews and nieces shall die after the death of my said wife not leaving any then surviving lawful issue or descendants, my executors shall divide, distribute, convey and

transfer the one-seventh part of my residuary estate invested and held for his or her benefit as aforesaid equally amongst and to the then survivors of my said seven nephews and nieces and the then surviving lawful issue or descendants of either or any of my said seven nephews and nieces who may have previously died leaving such issue or descendants, equally *per stirpes* and not *per capita*."

This would seem to be clear and explicit, and to call for the distribution of a one-sixth part of Mary J. Naylor's one-seventh share in the estate among the lawful issue and descendants of John Naylor, the issue and descendants by both his marriages sharing equally therein. But it is the contention of respondents that the scheme of distribution is changed by the following clauses of the same paragraph:

" But with respect to the one-seventh part of my said residuary estate which I have hereinbefore directed to be invested and held for the benefit of my nephew John Naylor, my Will is and I hereby direct my Executors to distribute, convey and transfer the said one-seventh part upon his death after the death of my said wife amongst and to the then surviving children of the second marriage of my said nephew John Naylor and the then surviving lawful issue or descendants of any or either of them who may have previously died leaving such issue or descendants equally *per stirpes* and not *per capita*.

"And in case my said nephew, John Naylor, shall die at any time after the decease of my said wife leaving no issue or lawful descendants by his said second marriage, then the one-seventh part of my residuary estate above directed to be invested and held for his benefit, shall be distributed equally amongst the then survivors of my said seven nephews and nieces, and the then surviving lawful issue or descendants of any or either of them who may have previously died leaving such issue or descendants equally *per stirpes* and not *per capita*."

The remaining clauses of said paragraph read as follows:

" In case either or any of my said seven nephews and nieces shall die before the death of my said wife leaving lawful issue or descendants surviving at the time of my said wife's death, I direct my said executors to divide my said residuary estate

into as many equal parts as shall be equal in number to the then survivors of my said seven nephews and nieces, and to him or her or those of them who shall have died leaving lawful issue or descendants who shall survive my said wife, and to invest and hold one of said parts for the benefit of each of the then survivors of my said seven nephews and nieces during his or her life and to dispose of the capital of such part upon his or her death as hereinbefore directed; and to pay, convey and transfer one of said parts to the then surviving lawful issue and descendants of each one of my said seven nephews and nieces who shall have previously died leaving such issue or descendants, equally *per stirpes* and not *per capita*.

" In case either or any of my said seven nephews and nieces shall die before the death of my said wife, not leaving any then surviving lawful issue or descendants, I direct my said Executors to divide my said residuary estate into as many equal parts as shall be equal in number to the then survivors of my said seven nephews and nieces, and the one or those of them who may have previously died leaving lawful issue or descendants, and to invest and hold one of such parts for the benefit of each of said survivors during his or her life and to dispose of the capital of such part upon his or her death as hereinabove directed.

"And also to pay, convey and transfer one of said parts equally *per stirpes* to the then surviving lawful issue or descendants of each of my said seven nephews and nieces who shall have previously died leaving such issue or descendants."

As I read this will the testator purposely and deliberately created two separate schemes of distribution as to the capital of the residuary estate, upon the death of each of his seven nephews and nieces: (1) As to the one-seventh share therein upon which each of his nephews and nieces was to receive the income for life, the principal of such share upon the death of each nephew or niece except John Naylor was to go to all his surviving lawful children and the issue or descendant of any deceased child or children *per stirpes;* (2) as to the one-seventh share, whereon John Naylor received the income for life, the principal thereof upon his death was to go to the surviving children of his second marriage only, and the issue or descendant of any child or children of such second marriage, *per*

*stirpes.* The intention of the testator was plain that as to the one-seventh share whereon John Naylor was to receive the income for life, the principal of such share should upon his death go only to the issue of his second marriage or their issue or descendants. But the very care taken to effectuate this intention of the testator makes more significant the failure to include any such limitation of the right to inherit to the children of John Naylor's second marriage in the provision which the testator made for the distribution of the principal of each one-seventh share in case any nephew or niece died after the death of his wife without leaving lawful issue or descendant. In such case the share of the nephew or niece so dying is to be divided among the survivors, and "the then surviving lawful issue or descendants of either or any of my said seven nephews and nieces who may have previously died leaving such issue or descendants, equally *per stirpes* and not *per capita.*" This seems to me to unmistakably indicate the intention of the testator to provide a different scheme of distribution of any share which might fall into the residuary estate from that provided for the direct distribution of the share of any original beneficiary. It indicates as well that the exclusion of the issue, or their descendants, of John Naylor's first marriage from any share in the latter distribution, did not extend to a prohibition against their sharing in the former. My conclusion is that under the terms of the will, a one-sixth share in the one-seventh share from which Mary J. Naylor received the income during her lifetime, goes to the issue (and descendants of deceased issue) of both of John Naylor's marriages, and is not limited to those by his second marriage.

The second question is presented by the appeal of the trustees from the refusal of the Surrogate's Court to allow them certain commissions. As to this, we find that the trustees had received all the commissions to which, upon the facts, they were lawfully entitled and the denial by the surrogate of their claim for commissions upon the sum of $22,500 was correct.

In so far as the trustees appeal from the decree it is affirmed. In so far as Grace A. N. Oxenford and others appeal therefrom, it is modified by construing the will of decedent in

accordance herewith. Costs and disbursements are allowed to all parties appearing on this appeal payable out of the estate.

CLARKE, P. J., SMITH, PAGE and GREENBAUM, JJ., concur.

Order modified as directed in opinion and as so modified affirmed, with costs to all parties appearing on this appeal payable out of the estate. Settle order on notice.